UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOODLOE MARINE, INC.,

    Plaintiff,

v.                                                Case No. 8:20-cv-679-TPB-AAS

B.C. TOWING, INC., CAILLOU ISLAND
TOWING COMPANY, INC.,

    Defendants,

_____/

CAILLOU ISLAND TOWING COMPANY, INC.,

    Counterclaimant,

v.

GOODLOE MARINE, INC.,

    Counter-defendant,

_____/

CAILLOU ISLAND TOWING COMPANY, INC.,

    Third-Party Plaintiff,

v.

RJA LIMITED,

    Third-Party Defendant.

_____/

1

# ORDER

Third-Party Defendant RJA Limited (RJA) moves to compel production of documents and better interrogatory answers from Third-Party Plaintiff Caillou Island Towing Company, Inc. (Caillou). (Doc. 88). Caillou opposes the motion. (Doc. 94).

## I.   BACKGROUND

Caillou Island Towing provides towage services in the territorial waters of the State of Florida and was the owner of the tug, M/V CHARLES J CENAC. (Doc. 21, ¶ 13). Goodloe Marine, Inc. (Goodloe) and Caillou entered into a Towing Agreement where Caillou agreed to tow a Goodloe tow from Port Bolivar, Texas, to Port St. Lucie, Florida. (*See* Doc. 23-1). While in territorial waters off the coast of Cedar Key, Levy County, the tow sank. (Doc. 77, ¶ 14).

Goodloe sued Caillou and Caillou filed a counterclaim against Goodloe and an amended third-party complaint against CTAL.[1] (Docs. 14, 77). As part of the Towing Agreement, Goodloe had contracted the services of a third party to survey the tow and certify it was fit for the voyage. Though Caillou alleges Charles Taylor Adjusting, Ltd. (CTAL) conducted the survey and certification (Doc. 77, ¶ 9), the parties agree RJA was the company retained to conduct the

---

[1] This action was consolidated with Case No. 8:30-cv-1641-TPB-AAS. (*See* Doc. 1).

survey (Doc. 74). Thus, the court granted the jointly requested substitution of RJA for CTAL as Third-Party Defendant.[2] (Doc. 75).

CTAL, prior to the substitution of RJA for CTAL, and RJA propounded various requests for production and interrogatories on Caillou. (*See* Doc. 88, Exs. A-E). Caillou objected to the requests for production related to "tug logs" and "documentation of crew sea-time." (*Id.*). Caillou also objected to interrogatories related to "tug logs," "documents for the voyage," and "towing officer assessment records for Captain Andrew Noble Adams and Captain Roger Taylor." (*Id.*).

RJA now moves to compel these discovery responses. (Doc. 88). Caillou opposes the motion. (Doc. 94). After RJA moved to compel, Caillou agreed to allow RJA's IT expert on board the tug CHARLES J. CENAC to extract the Rose Point electronic chart for the subject voyage. (Doc. 95). All other issues remain pending.

## II.   ANALYSIS

A party may obtain discovery about any nonprivileged matter relevant to any party's claim or defense and proportional to the needs. Fed. R. Civ. P.

---

[2] Consequently, and without apparent objection by either the movant or the respondent, for purposes of this discovery dispute, CTAL and RJA are treated interchangeably.

26(b)(1). Discovery helps parties ascertain facts that bear on issues. *ACLU of Fla., Inc. v. City of Sarasota*, 859 F.3d 1337, 1340 (11th Cir. 2017) (citations omitted).

A party may move for an order compelling discovery from the opposing party. Fed. R. Civ. P. 37(a). The party moving to compel discovery has the initial burden of proving the requested discovery is relevant and proportional. *Douglas v. Kohl's Dept. Stores, Inc.*, No. 6:15-CV-1185-Orl-22TBS, 2016 WL 1637277, at *2 (M.D. Fla. Apr. 25, 2016) (quotation and citation omitted). The responding party must then specifically show how the requested discovery is unreasonable or unduly burdensome. *Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559-60 (11th Cir. 1985).

### A.  Discovery related to the tug logs.

**CTAL's First Request for Production No. 11**:[3] The tug's logs for the voyage in question.

**Caillou's Response**: Enclosed CIT 611-634.

Caillou supplemented its discovery response. (*See* Doc. 94, Ex. A). Caillou states it "is not in possession of any further documents responsive to this request and therefore is in full compliance with same." (Doc. 94, p. 4). Thus, the motion to compel as to this request is moot.

---

[3] CTAL propounded its first requests for production before RJA's substitution.

> **CTAL's Third Request for Production No. 7**: The tug's Towing Logs for the past five (5) years, which sets out all towing information including but not limited to: date, year, hours, duration of wire rope used, wire tension, wire length, environmental conditions, wire length adjustments, remarks, date main towline installed, spare towline date, main towline lubrication and maintenance schedule, towed object, length of bridle, breaking load (M/T), breaking strain (M/T), date/hour towline connected, date/hour towline released, positions at when these events took place.
>
> **Caillou's Response**: Objection. Requesting the aforementioned information for a five (5) year period is unreasonable in time and scope. Moreover, this request seeks irrelevant information as it requests information regarding the duration of wire rope, wire tension, wire length, environmental conditions, towline, breaking load, breaking strain, etc., which have no relevance whatsoever to the allegations and claims made in this case. Subject to this objection and without waiving it, please refer to documents produced responsive to this request for a six (6) month period.

RJA's request for tug's towing logs are relevant and proportional to the needs of this action. However, towing logs dating back five years are overbroad and not proportional to the needs of the case. *See Reed v. Royal Caribbean Cruises, Ltd.*, No. 19-24668-CIV, 2020 WL 8226840, at *4 (S.D. Fla. Oct. 23, 2020) (allowing discovery from three years before the subject incident); *Felicia v. Celebrity Cruises, Inc.*, No. 12-20477-CIV, 2012 WL 12845124, at *2 (S.D. Fla. Sept. 21, 2012) (narrowing discovery requests from five years to two or three years before the event giving rise to the action). Thus, CTAL's Third Request for Production No. 7 is narrowed to the tug's towing logs for the past

5

three years.

> **RJA's First Set of Interrogatories No. 6**: Please list all part of refuge and/or sheltered waters utilized by you when weather conditions/sea state exceeded three (3) feet during the voyage.
>
> **Caillou's Response**: Please refer to the Charles J. Cenac's Log Book for the voyage in question provided by CIT as part of its Rule 26 Initial Disclosures.

Caillou provided all tug logs for the voyage in question. (*See* Doc. 94, Ex. A). Caillou states it "is not in possession of any further documents responsive to this request and therefore is in full compliance with same." (Doc. 94, p. 8). Thus, the motion to compel as to this request is moot.

### B.     Discovery related to the tug's crew sea-time.

> **CTAL's Third Request for Production No. 4**: Documentation of all tug crew sea-time aboard towing vessels for the past five (5) years to the date of the incident.
>
> **Caillou's Response**: Please see attached. (*See* Doc. 94, Ex. B).
>
> **CTAL's Third Request for Production No. 5**: All letters of service for the tug crewmembers for the past five (5) years up to the date of the incident. If these are not available for any/all crewmembers, all vital statistics of every tugboat that crewmember worked on.
>
> **Caillou's Response:** Objection. This request is vague, ambiguous and/or assumes that CIT knows what "vital statistics" means and what documents are responsive to same. Subject to this objection and without waiving it, please refer to documents produced in response to request for production number 4.

6

Caillou produced letters sent to the United States Coast Guard for each crewmember that breaks down their sea-time service during their employment with Caillou. RJA claims that Caillou only produced sea-times for only three months. However, the sea-time letters reflect the duration of a crewmembers' employment with Caillou.[4] The information sought in this request was provided. Thus, Caillou adequately responded to this discovery request.

### C. Discovery pertaining to Captain Adams and Captain Taylor's assessment records

**CTAL's First Set of Interrogatories, No. 5**: Please confirm whether the any member of the tug's crew at the time of the incident held a Towing Officers Assessment Record ("TOAR"). If so, list the name of the crewmember holding the TOAR, whether the crewmember obtained successful completion of the practical assessments of the TOAR, when the crewmember obtained complete "sign off" of the TOAR and the crewmember's Towing Vessel Service Record provided to obtain the TOAR or otherwise provide a complete copy of the TOAR for each crewmember.

**Caillou's Response:** Both, Captain Roger Taylor and Captain Andrew Adams, as operators of the tug, hold towing endorsements. Please see their mariner's credentials provided as part of their employee files with CIT. Also, any TOAR records from these crewmembers can be requested from the USCG National Vessel Documentation Center. CIT does not have copy of those records.

Caillou produced the employment file for Captain Rogers and Captain

---

[4] For example, Captain Roger Taylor was employed by Caillou since 2014, so his sea-time letter reflects his sea-time since 2014. However, crewmember Jessie Gilmore was employed with Caillou since September 2019, so his sea-time letter only reflects from that period on.

7

Taylor, which contains all Caillou's records for these individuals. Neither Captain Rogers nor Captain Taylor are employed by Caillou and Caillou states it "is not in possession of a complete copy of the TOAR." (Doc. 94, p. 11). Thus, the motion to compel as to this interrogatory is due to be denied.

### D. Discovery pertaining to voyage and tow plan from the Rose Point Electronic Chart System.

**RJA's First Request for Production No. 2**: Any other Voyage or towage plan that includes information beyond CIT Rule 26 disclosures, pages 69-72.

**Caillou's Response:** Upon information and belief, none other than the Rose Point Electronic chart [which was previously produced in Caillou's Rule 26 disclosures, pages 69-72].

**RJA's First Request for Production No. 4**: All documents obtained by you for the Voyage regarding the nearest ports of refuge.

**Caillou's Response:** Please refer to the voyage plan created with the Rose Point Electronic [which was produced in Caillou's Rule 26 disclosures, pages 69-72].

**RJA's First Request for Production No. 5**: All documents obtained by you for the Voyage regarding areas of shelter.

**Caillou's Response:** Please refer to the voyage plan created with the Rose Point Electronic [which was produced in Caillou's Rule 26 disclosures, pages 69-72].

With respect to each of these requests, Caillou states that "[a]ll records in [Caillou's] possession regarding the towage plan and voyage plan were

8

produced . . . [Caillou] has no further documentation responsive to these requests." (*See* Doc. 94, Ex. C). Caillou also agreed to allow RJA's IT expert on board the tug to extract the electronic chart for the voyage in question. (Doc. 95). Thus, Caillou adequately responded to these requests.

### III. CONCLUSION

RJA's motion to compel (Doc. 88) is **GRANTED in part and DENIED in part**. Caillou must respond to CTAL's Third Request for Production No. 7, as narrowed to the tug's towing logs for the past three years, by **September 24, 2021**. In all other respects, the motion is denied.

**ORDERED** in Tampa, Florida on September 10, 2021.

*Amanda Arnold Sansone*
AMANDA ARNOLD SANSONE
United States Magistrate Judge