UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GOODLOE MARINE, INC.,

    Plaintiff/Counter-Defendant,

v.                                                              Case No: 8:20-cv-679-JLB-AAS

CAILLOU ISLAND TOWING COMPANY,
INC.,

      Defendant/Counterclaimant
_____/

CAILLOU ISLAND TOWING COMPANY,
INC.,

    Third-Party Plaintiff,

v.

RJA, LTD.,

    Third-Party Defendant.
_____/

## ORDER

In this admiralty action, Plaintiff Goodloe Marine, Inc. ("Goodloe") contracted with Defendant Caillou Island Towing Company, Inc. ("CIT") to tug its dredge and idler barge from Texas to Florida (the "Tow"). Goodloe also hired Third-Party Defendant RJA, Ltd. ("RJA") to survey the Tow and certify its fitness, which RJA did. The dredge nevertheless sank during the voyage to Florida. Goodloe filed this lawsuit, seeking damages from CIT. CIT then filed a third-party complaint against RJA, seeking indemnity and damages in contribution as to the claims brought by Goodloe. For the Court's consideration is RJA's motion to dismiss CIT's

indemnification claims.    After careful review, RJA's motion to dismiss (Doc. 78) is **GRANTED in part**.

## BACKGROUND[1]

Goodloe owns the Dredge Perseverance (the "Dredge") and Idler Barge.  (Doc. 77 at 3, ¶ 4.)    CIT provides towage services and owns the tug, Charles J. Cenac.  (Id. at ¶ 7.)    For its part, RJA provides trip and tow surveying services.  (Id. at ¶ 5.)

Goodloe entered into an agreement with CIT for CIT to tow the Dredge and Idler Barger from Port Bolivar, Texas to Port St. Lucie, Florida.    (Doc. 77 at 3, ¶¶ 6, 9; Doc. 77-1.)    As part of the agreement, Goodloe hired RJA to conduct a trip and tow survey of the Tow.    (Doc. 77 at 3, ¶¶ 8–9.)[2]    RJA surveyed the Tow and issued a Trip and Tow Approval Certificate with Tow Preparations and Recommendations.  (Doc. 77 at 4, ¶ 10; Doc. 77-2.)    RJA certified that its surveyor "conducted a survey of the . . . [T]ow, tug CHARLES J CENAC, securing and towing arrangements and . . . [i]t is the opinion of the undersigned that the stowage and

---

[1] "At the motion to dismiss stage, all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff."  Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1274 n.1 (11th Cir. 1999) (citation omitted).    A complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."    Fed. R. Civ. P. 8(a)(2). Under this standard, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"    Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)).

[2] RJA attached an "Acknowledgement of Assignment" and "Standard Terms and Conditions" to its motion to dismiss.    (Docs. 78-1, 78-2.)    As discussed below, even if the Court could consider these two documents, they are immaterial to the resolution of RJA's motion to dismiss.

securing is satisfactory and the . . . vessels are fit to proceed on the proposed tow."  (Doc. 77-2 at 1.)

While under tow by CIT, the Dredge took on water and sank off the coast of Cedar Key, Florida.   (Doc. 77 at 5, ¶ 14.)   Goodloe subsequently sued CIT, and CIT filed a counterclaim against Goodloe.   (Docs. 1, 14.)   CIT also filed a third-party complaint against RJA, seeking to hold it liable in indemnity or, alternatively, in contribution for the damages sought by Goodloe.   (Doc. 77 at 5–7, ¶¶ 16–17, 21.) Essentially, CIT alleges that the Dredge sank because it was unseaworthy and that, in performing its trip and tow survey, RJA both breached an implied warranty of workmanlike performance and was negligent.   (Id. at ¶¶ 11, 24–25, 34–35.)

RJA moves to dismiss CIT's claims for indemnity, contending that indemnification is unavailable because it is a surveyor and only property damages are alleged.   (Doc. 78 at 5–10.)   RJA also contends that CIT's remedies against it are limited based on a contractual provision that excludes certain warranties.   (Id. at 10–12.)   Lastly, RJA contends that, contrary to representations made by CIT, it need not directly respond to Goodloe's complaint and that, in all events, its arguments for dismissal also apply to Goodloe's claims.   (Id. at 11–13.)

## DISCUSSION

First, CIT's claims for indemnification are due to be dismissed.   Second, RJA's reliance on the purported contract as a basis to dismiss the indemnification claims is unnecessary and, in all events, unavailing at this stage.   Finally, although RJA was required to respond to Goodloe's complaint, RJA has not

defaulted, and any indemnification claims that Goodloe may have against RJA are also due to be dismissed.

## I.      The allegations do not establish that indemnification is an appropriate remedy.

As will be explained, even if the allegations establish that RJA owed Goodloe or CIT a duty to perform the trip and tow survey in a workmanlike manner, indemnification as to damages resulting from any breach of that duty is not an appropriate remedy.   Accordingly, CIT's indemnification claims must be dismissed.

As an initial matter, it is settled that, in performing the survey of a vessel, surveyors must use due care to identify defects in the vessel and notify the owner of such defects.   See Hale Container Line, Inc. v. Houston Sea Packing Co., 137 F.3d 1455, 1471 (11th Cir. 1998).   Maritime service contractors must also perform their services in compliance with an implied warranty of workmanlike performance, which requires a reasonable level of care, skill, and safety.   See Vierling v. Celebrity Cruises, Inc., 339 F.3d 1309, 1315–16 (11th Cir. 2003).

Implied warranties of workmanlike performance in maritime service contracts were addressed in Ryan Stevedoring Co. v. Pan–Atl. Steamship Corp., 350 U.S. 124 (1956).   There, the Supreme Court ruled that stevedores and other contractors provide shipowners an implied warranty that their services will be performed in a "workmanlike" manner, and that the failure to do so constitutes a breach of contract and provides shipowners with a right of indemnification for resulting foreseeable losses.   350 U.S. at 132–35.

Courts have held that, unlike with other service contracts, privity of contract is not required, and "the warranty extends beyond the immediate contracting parties and encompasses foreseeable third parties within the stevedore's 'zone of responsibility.'"   See In re Complaint of Christiansen Marine, Inc., No. 2:95-cv-896, 1996 U.S. Dist. LEXIS 10920, at *27 (E.D. Va. Apr. 11, 1996) (quoting C.C. Sanderlin v. Old Dominion Stevedoring Corp., 385 F.2d 79, 81–82 (4th Cir. 1967)); see also Brock v. Coral Drilling, Inc., 477 F.2d 211, 215 n.4 (5th Cir. 1973).   For example, in Salter Marine, Inc. v. Conti Carriers & Terminals, Inc., 677 F.2d 388 (4th Cir. 1982), a barge capsized due to a stevedore's improper loading of goods. The court held that, despite a lack of privity, the stevedore's warranty of workmanlike performance extended to the tugboat towing the barge because, given that the barge depended on the tug for locomotion and on its crew for monitoring, it was "unquestionably foreseeable" that the tugboat could be damaged "if the stevedore performed improperly."   677 F.2d at 390.

Similarly, the allegations here establish that RJA was a maritime contractor hired by Goodloe to perform a trip and tow survey and that, at least for purposes of this motion to dismiss, a warranty of workmanlike performance was implied in their agreement.   Further, CIT alleges that the towing agreement between CIT and Goodloe required Goodloe to warrant the seaworthiness of the Tow, and that, as a result, Goodloe contracted with RJA to survey the Tow and certify its fitness for the voyage.   (Doc. 77 at 3, ¶¶ 8–9.)   As noted, at least for purposes of resolving this motion to dismiss, it is immaterial that CIT may lack privity with RJA because the

allegations establish that CIT, the entity that towed the dredge, was a foreseeable third party within RJA's zone of responsibility.

That said, the mere existence of the implied warranty of workmanlike performance does not necessarily make RJA liable in indemnity.   Assuming the allegations establish a breach, CIT must also show that RJA had a "duty to indemnify . . . for liability arising out of its breach of the duty."   Agrico Chem. Co. v. M/V Ben W. Martin, 664 F.2d 85, 93 (5th Cir. 1981).   Indeed, courts have diverged from Ryan's "all or nothing" requirement of indemnification where there is a breach.   See Smith & Kelly Co. v. S/S Concordia TADJ, 718 F.2d 1022, 1030 (11th Cir. 1983) (noting the "clear trend in maritime cases . . . to reject all-or-nothing or other arbitrary allotments of liability in favor of a system that divides damages on the basis of the relative degree of fault of the parties").   Instead, in Smith & Kelly, the Eleventh Circuit applied comparative fault principles for a breach of warranty of workmanlike performance claim.   Id. at 1028–30.   Notwithstanding, Ryan indemnity still applies to "those controversies involving the special rules governing the obligations and liability of shipowners, which necessitated [Ryan indemnity's] formulation and justify its application."   Vierling, 339 F.3d at 1318 (applying Ryan indemnity in a personal injury case involving a maritime contractor).

Here, indemnification under Ryan is inappropriate for two reasons.   First, courts have regularly held that, because of the unique services they perform, surveyors and classification societies do not have such a duty to indemnify owners and third parties for damages.   See, e.g., Great Am. Ins. Co. v. Bureau Veritas, 338

F. Supp. 999, 1015 (S.D.N.Y. 1972), aff'd, 478 F.2d 235 (2d Cir. 1973); In re Eternity Shipping, Ltd., Eurocarriers, S.A., 444 F. Supp. 2d 347, 361–63 (D. Md. 2006); see also Meridian Bulk Carriers, Ltd. v. Kinder Morgan Bulk Terminals, Inc., No. 8:07-cv-1422-T-33TGW, 2009 WL 2180582, at *8 (M.D. Fla. July 22, 2009).

Here, RJA was hired by Goodloe to conduct a trip and tow survey. Neither Goodloe nor CIT allege that RJA created any hazards or defects on the dredge or other vessels when conducting the survey.   Rather, RJA merely certified that the vessels were fit to proceed on the Tow and provided preparations and recommendations.   In short, CIT has not shown that indemnity under Ryan extends to the agreement between RJA and Goodloe or CIT.

Second, indemnification is also unavailable because there are no allegations of damages other than property damage.   District courts in this Circuit have found indemnification under Ryan unavailable in such circumstances.   See Meridian Bulk Carriers, 2009 WL 2180582, at *8 (noting that in "property damage cases, the Ryan doctrine has been virtually abandoned").   And although the Eleventh Circuit has not addressed the issue of whether Ryan extends to cases where only property damages are alleged, most circuits that have addressed the question find that it does not.   See Cont'l Grain Co. v. Puerto Rico Mar. Shipping Auth., 972 F.2d 426, 439 (1st Cir. 1992); Phillips Petroleum Co. v. Stokes Oil Co., 863 F.2d 1250, 1256–57 (6th Cir. 1988); Bosnor, S.A. de C.V. v. Tug L.A. Barrios, 796 F.2d 776, 785–86 (5th Cir. 1986).[3]

---

[3] To be sure, CIT points to cases in the Fourth Circuit that applied Ryan

In summary, because indemnification is unavailable as a remedy here, RJA's motion is granted to the extent that CIT's indemnity claims are dismissed.[4]

## II.    RJA is unable to rely on its purported contract with Goodloe to limit CIT's remedies against RJA.

RJA next contends that CIT's claims for indemnity are barred by a provision in RJA's contract with Goodloe.   (Doc. 78 at 10–12.)   CIT challenges the authenticity of the contract, which was not included in the pleadings, and argues that, as a result, the Court is unable to consider it on a motion to dismiss.   (Doc. 79 at 9–11.)   As noted, because indemnification is not an available remedy, it is unnecessary to determine whether the contract between RJA and Goodloe also excludes indemnification.   In all events, the Court agrees with CIT that, because RJA has not shown the centrality of the contract to the claims and CIT has

---

where evidently only property damages were involved.   (Doc. 79 at 8); Salter Marine, Inc., 677 F.2d 388; Matter of Robbins Maritime, Inc., 906 F. Supp. 309, 314 (E.D. Va. 1995); Christiansen Marine, Inc., 1996 WL 616188, at *9.   However, these cases are not binding, and even still, there are district courts in the Fourth Circuit that have more recently not applied Ryan where only property damages are raised.   See Sea King Corp. v. Eimskip Logistics, Inc., 367 F. Supp. 3d 529, 546 (E.D. Va. 2019) (finding the doctrine inapplicable outside of cases "involving the 'special relationship' between a shipowner and a stevedore, ship-repair contractor, or tug pilot towing a 'dead ship'").   The court in Sea King also observed that liability in indemnity should be placed on the party best situated to adopt preventive measures and reduce the likelihood of injury.   Id. at 541, 551.   To the extent this is relevant, CIT has not established that RJA is such a party.

[4] In determining that indemnification is not an available remedy, it is unnecessary to address RJA's contentions that it had no duty to certify the seaworthiness of the vessels or oversee management or operation of the vessels.   (Doc. 78 at 8–9.)   Further, because RJA only seeks to dismiss the indemnification claims, it is unnecessary to determine whether Count I, which also seeks damages resulting from the purported breach of the warranty of workmanlike performance, is otherwise due to be dismissed.   (Doc. 77 at 9, ¶¶ 30–31.)

challenged its authenticity, its consideration is inappropriate.[5]

## III.   RJA must respond to Goodloe's claims.

RJA represents that during a conferral between its and CIT's counsel, CIT asserted that RJA was required to respond to Goodloe's complaint.   (Doc. 78 at 12.) RJA contends that it is not required to do so because Goodloe never asserted a claim against RJA and confirmed during a January 2021 hearing that it is not seeking to hold RJA responsible for any losses.   (Id. at 13.)   CIT, meanwhile, maintains that RJA must respond and that, because it has not, RJA has defaulted.   (Doc. 79 at 11–13.)   In support, CIT relies on Federal Rule of Civil Procedure 14(c)(2), which provides as follows:

> The third-party plaintiff may demand judgment in the plaintiff's favor against the third-party defendant.   In that event, the third-party defendant must defend under Rule 12 against the plaintiff's claim as well as the third-party plaintiff's claim; and the action proceeds as if the plaintiff had sued both the third-party defendant and the third-party plaintiff.

Fed. R. Civ. P. 14(c)(2).

In admiralty cases, courts interpreting Rule 14(c)(2) have found that a third-party defendant must defend against a plaintiff's claims, even where the plaintiff

---

[5] District courts generally must limit their consideration of a motion to dismiss to the pleadings and any exhibits attached.   See Roberts v. Carnival Corp., 824 F. App'x 825, 826 (11th Cir. 2020) (citation omitted).   However, a court may consider a document attached to a motion to dismiss if the document is referred to in the complaint, central to the plaintiff's claim, and of undisputed authenticity.   Id. Here, even if the contract is referred to in the complaint and central to the claims, the attached contract does not reflect that it was executed between RJA and Goodloe.   (Doc. 77 at 3–4, ¶¶ 2, 9; Docs. 78-1, 78-2.)

did not raise a direct claim against the third-party defendant.   See Peter Fabrics, Inc. v. S.S. Hermes, 765 F.2d 306, 313 (2d Cir. 1985).   Indeed, the rule allows a third-party plaintiff to "require . . . that a third-party defendant make his defense directly to the claim of the plaintiff as well as to that of the third-party plaintiff."   Id. (citation omitted); see also Campbell Indus., Inc. v. Offshore Logistics Int'l, Inc., 816 F.2d 1401, 1406 (9th Cir. 1987); Vogt-Nem, Inc. v. M/V Tramper, 263 F. Supp. 2d 1226, 1230 (N.D. Cal. 2002).

In its Amended Third-Party Complaint, CIT cited to Rule 14(c) and prayed that the Court enter judgment against RJA and in favor of Goodloe on each count.   (Doc. 77 at 9, 12–13 ¶¶ 31(A), 41(A), 43–44.)   Such language has been deemed sufficient to invoke Rule 14(c)(2)'s requirement.   See Royal Ins. Co. of Am. v. Sw. Marine, 194 F.3d 1009, 1018 (9th Cir. 1999) (reference to Rule 14(c) and prayer that third-party defendant respond to plaintiff).   Moreover, it is immaterial that Goodloe did not seek to hold RJA responsible for any losses.   See, e.g., Best Indus. (Pvt), Ltd. v. Pegasus Mar., Inc., No. 13 Civ. 446(SAS), 2013 WL 2468030, at *1 (S.D.N.Y. June 7, 2013) (not allowing plaintiff to dismiss claims against third-party defendant once Rule 14(c)(2) invoked without third-party plaintiff's consent). Accordingly, RJA is required to respond to Goodloe's claims.

As to whether RJA has defaulted on Goodloe's claims, the Court grants RJA's request to accept its motion to dismiss as "being submitted to dismiss . . . any claims from Goodloe which CIT attempt to impute to RJA in indemnity."   (Doc. 78 at 14); see Cannon v. Austal USA, LLC, No. 15-cv-2582-CAB (BLM), 2016 WL 4916966, at

*2 (S.D. Cal. Apr. 11, 2016) (applying arguments in a third-party defendant's motion to dismiss to plaintiff's claims).   Accordingly, entry of default is unwarranted, and any claims for indemnification Goodloe may raise against RJA are also due to be dismissed.

## CONCLUSION

RJA's motion to dismiss (Doc. 78) is **GRANTED** to the extent that any claims for indemnification against RJA brought by Goodloe or CIT are due to be **dismissed**, and entry of default will not be entered against RJA.   On or before November 22, 2021, RJA is directed to respond to the remaining claims against it, including the claims of Goodloe.   The motion is otherwise **DENIED**.

**ORDERED** in Tampa, Florida, on November 1, 2021.

**JOHN L. BADALAMENTI**
United States District Judge